# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **GREAT AMERICAN OPPORTUNITIES, INC.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **CHERRY BROTHERS, LLC d/b/a** ) <br> **CHERRYDALE FARMS FUNDRAISING,** ) <br> **RENE ULLOA, MATTHEW L. PARKIN,** ) <br> **TODD ALLEN MILLS, REBECCA** ) <br> **FRANCIS, and STEVEN B. CLONTS,** ) <br> ) <br> **Defendants.** ) | Case No. 3:17-cv-1022 <br> Judge Aleta A. Trauger |

## MEMORANDUM

Steven B. Clonts, Rene Ulloa, Todd Allen Mills, and Rebecca Francis (collectively, with Matthew L. Parkin, who did not join this motion, "Individual Defendants") have filed a Motion to Dismiss (Docket No. 113), to which Great American Opportunities, Inc. ("Great American") has filed a Response (Docket No. 123), and those defendants have filed a Reply (Docket No. 133). Parkin has also filed a Motion to Dismiss (Docket No. 120), which Great American addresses in its Response (Docket No. 123), and Parkin has filed a Reply (Docket No. 132). For the reasons stated herein, the Motions will be granted in part and denied in part.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Great American markets, designs, and administers fundraising programs for schools, councils, civic organizations, and others. Great American fundraising products are built around

---

[1] The facts herein are taken primarily from the Amended Complaint. (Docket No. 51.) Except where otherwise noted, the facts are accepted as true for purposes of the Motions to Dismiss.

the sale of products that Great American distributes. (Docket No. 51 ¶¶ 16–17.) Great American claims to rely on:

> trade secrets and other confidential business information[,] includ[ing], but . . . not limited to, the following: business plans, marketing and promotional strategies, financial data, sales training materials, actual and potential customer lists and related information, past and current fundraising programs, sales representative contact and performance information, pricing information and strategies, competitive business information, and industry know-how.

(*Id.* ¶ 20.) This information—or at least some of it—is stored in business records that are protected by digital and/or physical security measures, as applicable. (*Id.* ¶¶ 31, 33.) Great American sales representatives are given access to the company's confidential information for use in furtherance of their job duties. (*Id.* ¶ 32.) Great American also emphasizes that, once it establishes a client relationship, it "engages in an intensive process" to craft and execute a customized strategy that will most effectively meet the specific needs of that particular customer. (*Id.* ¶ 24.)

The Individual Defendants are all former Great American employees. Ulloa worked at Great American for nearly fourteen years, rising to the position of sales manager and eventually sales director. (*Id.* ¶¶ 42–46.) Clonts, Mills, Francis, and Parkin were commissioned sales representatives. (Id. ¶¶ 6–7, 107, 128.) Each of the Individual Defendants signed employment agreements with Great American that contained non-compete clauses. (*Id.* ¶¶ 54, 70–71, 90–91, 114, 133.) Clonts, Mills, Francis, and Parkin's agreements prohibited them from directly or indirectly soliciting any of Great American's customers within the respective territories they serviced on behalf of Great American or otherwise personally competing with Great American in those territories, for periods ranging from eighteen to twenty-four months after leaving the company. (*Id.* ¶¶ 70–71, 90–91, 114–15, 132–33.) Ulloa's contract included a similar, one-year restriction, although Ulloa's provision, unlike the others', expressly identified states and

localities to be included. (*Id.* ¶ 54.) The agreements also expressly prohibited the Individual Defendants from taking or using any of Great American's confidential business information for any purpose other than serving Great American. (*Id.* ¶¶ 57–58, 73–74, 92–93, 117–18, 134–35.)

The Individual Defendants all resigned from Great American during the first half of 2017. (*Id.* ¶¶ 41, 67, 87, 107, 128.) Ulloa retained an iPad provided to him by Great American that stores all or portions of Great American's trade secret and confidential information. (*Id.* ¶ 64.) Upon resigning, each of the Individual Defendants went to work at Cherry Brothers, LLC d/b/a Cherrydale Farms Fundraising ("Cherrydale"), which, both directly and through its corporate predecessor, has a long history of direct competition with Great American. (*Id.* ¶¶ 145–46.) In 2008, Great American successfully sued Cherrydale's predecessor in Delaware chancery court for improperly recruiting Great American personnel and inducing them to breach their employment agreements. *See Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, No. CIV.A. 3718-VCP, 2010 WL 338219, at *8, 29 (Del. Ch. Jan. 29, 2010). The sued predecessor later filed for receivership and ceased doing business altogether, leaving Cherrydale to continue its operations. (Docket No. 51 ¶ 150.)

Great American claims that, in 2017, Cherrydale pursued a similar, well-orchestrated plan to recruit Great America's leading sales force members, including the Individual Defendants, for the purpose of accessing Great American's trade secrets and inducing the recruited employees to breach their Great American non-compete provisions. (*Id.* ¶¶ 152–53.) Great American claims that, upon going to Cherrydale, all of the Individual Defendants violated their employment agreements by "directly and/or indirectly soliciting Great American's customers in the territories . . . which they serviced and/or managed during their employment with Great American." (*Id.* ¶ 161.) In particular, Great American alleges that Parkin and Francis

localities to be included. (*Id.* ¶ 54.) The agreements also expressly prohibited the Individual Defendants from taking or using any of Great American's confidential business information for any purpose other than serving Great American. (*Id.* ¶¶ 57–58, 73–74, 92–93, 117–18, 134–35.)

The Individual Defendants all resigned from Great American during the first half of 2017. (*Id.* ¶¶ 41, 67, 87, 107, 128.) Ulloa retained an iPad provided to him by Great American that stores all or portions of Great American's trade secret and confidential information. (*Id.* ¶ 64.) Upon resigning, each of the Individual Defendants went to work at Cherry Brothers, LLC d/b/a Cherrydale Farms Fundraising ("Cherrydale"), which, both directly and through its corporate predecessor, has a long history of direct competition with Great American. (*Id.* ¶¶ 145–46.) In 2008, Great American successfully sued Cherrydale's predecessor in Delaware chancery court for improperly recruiting Great American personnel and inducing them to breach their employment agreements. *See Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, No. CIV.A. 3718-VCP, 2010 WL 338219, at *8, 29 (Del. Ch. Jan. 29, 2010). The sued predecessor later filed for receivership and ceased doing business altogether, leaving Cherrydale to continue its operations. (Docket No. 51 ¶ 150.)

Great American claims that, in 2017, Cherrydale pursued a similar, well-orchestrated plan to recruit Great America's leading sales force members, including the Individual Defendants, for the purpose of accessing Great American's trade secrets and inducing the recruited employees to breach their Great American non-compete provisions. (*Id.* ¶¶ 152–53.) Great American claims that, upon going to Cherrydale, all of the Individual Defendants violated their employment agreements by "directly and/or indirectly soliciting Great American's customers in the territories . . . which they serviced and/or managed during their employment with Great American." (*Id.* ¶ 161.) In particular, Great American alleges that Parkin and Francis

helped Cherrydale seek to increase its presence in Florida, Mills helped Cherrydale seek to increase its presence in Virginia, and Clonts helped Cherrydale seek to increase its presence in Tennessee and Alabama. (*Id.* ¶¶ 163–66.) Great American claims that the Individual Defendants were able to use Great American's trade secrets to bypass the substantial amount of work that Cherrydale would have otherwise needed to expend on building client bases in those states. (*Id.* ¶¶ 168–69.) Great American maintains that Cherrydale was well aware that using the Individual Defendants in this manner amounted to enticing them to break their employment agreements, both because of the previous litigation and because Great American sent a letter following Ulloa's departure informing Cherrydale of the terms of Ulloa's agreement. (*Id.* ¶ 156.)

Great American filed its initial Verified Complaint, naming Cherrydale and all of the Individual Defendants, except Clonts, on July 11, 2017. (Docket No. 1.) On August 8, 2017, following an initial round of motions and rulings resulting in a modified temporary restraining order ("TRO") against the then-named defendants (Docket No. 43), Great American filed an Amended Complaint adding its claims against Clonts (Docket No. 51), who has since been added to the TRO (Docket No. 71). Count I of the Amended Complaint raises claims for actual and threatened misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*, against all defendants; Count II raises claims for actual and threatened misappropriation of trade secrets in violation of Tennessee's Uniform Trade Secrets Act ("Uniform Act" or "UTSA"), Tenn. Code Ann. § 47-25-1701 *et seq.*, against all defendants; Count III raises claims for breach of contract against the Individual Defendants; Count IV raises a claim for procurement of breach of contract against Cherrydale; Count V raises claims for breach of fiduciary duty against the Individual Defendants; Count VI raises a claim for aiding and abetting breach of fiduciary duty against Cherrydale; Count VII raises a claim of tortious

interference with contract against Cherrydale; and Count VIII raises claims for tortious interference with business relationships against all defendants. (Docket No. 51 ¶¶176–246.)

The parties continued briefing Great American's request to transform the temporary restraining order into a preliminary injunction in anticipation of a September 5, 2017 hearing. (Docket No. 81; Docket No. 89; Docket No. 90.) On September 4, 2017, however, the defendants filed an unopposed Motion to Continue Preliminary Injunction Hearing, in which they informed the court that Cherrydale had terminated Parkin on the ground that materials uncovered during discovery revealed that he had continued to perform work on Great American's behalf after he had come to Cherrydale. (Docket No. 101 ¶ 3.) Counsel for the Individual Defendants determined that a conflict of interest had arisen with regard to Parkin, who would need to obtain separate counsel. (*Id.* ¶ 5.) The court granted the motion and continued the hearing, to be reset by later order of the court. (Docket No. 102.) Clonts, Mills, Ulloa, and Francis filed their Motion to Dismiss on September 27, 2017. (Docket No. 113.) Parkin filed his separate but significantly overlapping Motion on October 2, 2017. (Docket No. 120.) The motions have been briefed and are ripe for review.

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must

determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

**A. Misappropriation of Trade Secrets**

The Individual Defendants argue that Counts I and II should be dismissed as to them because Great American has made only vague allegations that fall short of establishing the elements necessary to support claims for misappropriation of trade secrets under either the DTSA or the Uniform Act. Great American responds that it has alleged facts sufficient to put the Individual Defendants on notice with regard to the information and actions at issue and that requiring more would amount to the imposition of a legally baseless heightened pleading requirement for trade secret cases. The requirements for establishing misappropriation of a trade secret are largely the same under the DTSA and the Uniform Act. *See Ukrainian Future Credit Union v. Seikaly*, No. 17-CV-11483, 2017 WL 5665960, at *10 n.11 (E.D. Mich. Nov. 27, 2017) ("The DTSA has a similar trade secret definition to the UTSA and was intended to be

6

substantially similar to the UTSA definition."); *Phyllis Schlafly Revocable Trust v. Cori*, No. 4:16-CV-016-31-JAR, 2016 WL 6611133, at *2 (E.D. Mo. Nov. 9, 2016) ("The elements of Plaintiffs' trade secret misappropriation claims under the DTSA and MUTSA are essentially the same."); *see also* H.R. Rep. 114-529 ("While other minor differences between the UTSA and Federal definition of a trade secret remain, the Committee does not intend for the definition of a trade secret to be meaningfully different from the scope of that definition as understood by courts in States that have adopted the UTSA.").

The Individual Defendants argue first that Great American has insufficiently pleaded the existence of any trade secrets. The Uniform Act defines a "trade secret" as:

> information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:
>
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4). Tennessee courts have recognized a number of factors relevant to identifying whether a piece of information is a trade secret:

> (1) the extent to which the information is known outside of the business;
>
> (2) the extent to which it is known by employees and others involved in the business;
>
> (3) the extent of measures taken by the business to guard the secrecy of the information;
>
> (4) the value of the information to the business and to its competitors;
>
> (5) the amount of money or effort expended by the business in developing the information;

> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others[.]

*Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 589 (Tenn. Ct. App. 2001) (quoting *Venture Express, Inc. v. Zilly*, 973 S.W.2d 602, 606 (Tenn. Ct. App. 1998)).

The Individual Defendants rely on a number of cases in which district courts have dismissed trade secret misappropriation claims for having failed to identify sufficiently the allegedly misappropriated trade secrets. *See, e.g.*, *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29, 2013 WL 6332971, at *4 (M.D. Fla. Dec. 5, 2013) (dismissing claim premised on description of trade secrets that was "so broad as to be meaningless"); *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (same); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (dismissing claim for merely reciting the statutory definition of "trade secret"). Even these cases, however, recognize that a plaintiff is required only to overcome the ordinary Rule 8 bar of pleading facts sufficient "to give defendants notice of what was misappropriated." *Am. Registry*, 2013 WL 6332971, at *4; *see also Medafor*, 2009 WL 2163580, at *1 (describing plaintiff's allegations as "insufficient to inform [the defendant] of the basic fact of what exactly it is supposed to have stolen or unlawfully obtained"); *Pellerin*, 877 F. Supp. 2d at 988 (stating that counter-plaintiff failed to plead facts "with sufficient particularity to put [the counter-defendant] on notice of what [the counter-plaintiff] claims is a trade secret"). In *ProductiveMD, LLC v. 4UMD, LLC*, another judge of this court similarly observed that a trade secret plaintiff bears no special pleading burden beyond the ordinary requirements of Rule 8. 821 F. Supp. 2d 955, 961–62 (M.D. Tenn. 2011) (Sharp, J.).

While Great American has not listed all of the details of its alleged trade secrets, it has, in addition to describing the secrets generally, pleaded a great deal of context explaining how the secrets were developed and used by Great American, why those secrets are valuable, why Cherrydale sought them, and how Cherrydale has allegedly benefited from the misappropriation. Even assuming, *arguendo*, that Cherrydale's initial general description of its secrets was insufficient, the ensuing context is enough to put the Individual Defendants on notice with regard to what information is at issue.

The Individual Defendants next point out that many of the advantages that Cherrydale allegedly acquired by hiring Great American's former employees are not, and never were, the types of advantages that could be classified as trade secrets. With regard to some of the benefits Cherrydale has allegedly received, that is undoubtedly true. The first requirement of a trade secret, after all, is that it be a piece of "information," Tenn. Code Ann. § 47-25-1702(4), and Great American has alleged that Cherrydale acquired more than information. One of the most significant advantages that Cherrydale allegedly obtained was access to its new employees' preexisting client relationships, and, while the *fact* of a relationship is information,[2] a relationship itself brings with it any personal goodwill, trust, and rapport that the new employee may have built up with her old clients. Because goodwill, trust, and rapport are not information—or, at the very least, not information in the same sense that a "formula, pattern, compilation, program, device, method, technique, process, or plan" is information, Tenn. Code Ann. § 47-25-1702(4)—they are not trade secrets.

---

[2] Whether a client's identity will meet the other requirements of being a trade secret is another question. *See Fid. Brokerage Servs. LLC v. Clemens*, No. 2:13-CV-239, 2013 WL 5936671, at *8 (E.D. Tenn. Nov. 4, 2013) ("The identities of the employer's customers do not generally amount to confidential business information.") (citing *Heyer–Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814 (Tenn. Ct. App. 1990)).

A departing salesperson also may take with her a great deal of useful information about the client or the client's community that, though valuable, is not secret. *See PartyLite Gifts, Inc. v. Swiss Colony Occasions*, No. 3:06-CV-170, 2006 WL 2370338, at *4 (E.D. Tenn. Aug. 15, 2006) ("Tennessee courts have held that, absent evidence to the contrary, these types of information are not confidential: (1) remembered information as to a business's prices; (2) specific needs and business habits of certain customers; and (3) an employee's personality and relationships that he has established with certain customers.") (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 215 (Tenn. Ct. App. 2004)). Similarly, insofar as any of the Individual Defendants were simply better salespeople on the day they left Great American than they had been on the day they started, their acquisition of general sales skills, valuable though it may have been, is not an asset covered by trade secret law. *See Fid. Brokerage Servs. LLC v. Clemens*, No. 2:13-CV-239, 2013 WL 5936671, at *8 (E.D. Tenn. Nov. 4, 2013) ("An employer does not have a protectable interest in the general knowledge and skill of an employee.") (citing *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 473 (Tenn. 1984)).

Great American, however, does not claim only that the Individual Defendants have allowed Cherrydale to use their client relationships, general recollections, or sales skills. The Amended Complaint alleges that Cherrydale has also benefited from access to detailed information about, *inter alia*, pricing, promotional strategies, and training practices, as well as Great American's carefully assembled, detailed information regarding both its customers themselves and those customers' past individualized fundraising programs. It alleges that that information is valuable, that its value would be eroded if it were not secret, and that Great American takes both practical and contractual steps to safeguard the information's secrecy. Those allegations are sufficient to meet the statutory definition of "trade secret."

The Individual Defendants argue next that Great American has failed to allege misappropriation. The Uniform Act defines "misappropriation" as:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

    (ii) Used improper means to acquire knowledge of the trade secret; or

    (ii) At the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was:

        (a) Derived from or through a person who had utilized improper means to acquire it;

        (b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

    (iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Tenn. Code Ann. § 47-25-1702(2). Great American argues that it has met this definition by alleging that the Individual Defendants, while Great American employees, had access to valuable trade secrets that they had an obligation to protect and use only as authorized and, instead, "are using and intend to use Great American's trade secrets and other confidential information . . . in competition with Great American." (Docket No. 57 ¶ 167.) According to the Amended Complaint, "Cherrydale now knows the identity of the most profitable customers [and] key contacts at those customers, knows the customers' needs and the details of prior programs, and can match or even undercut Great American pricing." (*Id.* ¶ 170.) In other words, the Individual Defendants "disclos[ed] or use[d] . . . trade secret[s] of another" while knowing that the secrets

11

were "[a]cquired under circumstances giving rise to a duty to maintain [their] secrecy or limit [their] use." Tenn. Code Ann. § 47-25-1702(2). The Individual Defendants' described conduct therefore satisfies at least one statutory route for establishing misappropriation.

The Individual Defendants' argument that more is required, with regard to either the existence of trade secrets or misappropriation, amounts to an attempt to impose a heightened pleading requirement where none exists. Great American has made its allegations with sufficient clarity and detail to put the Individual Defendants on notice of the substance of the claims against them. The court accordingly will not dismiss Counts I or II.

## B. Breach of Contract

The Individual Defendants argue that the court should dismiss Count III, for breach of contract, on the ground that the non-compete clauses in the Individual Defendants' employment agreements are unenforceable under Tennessee law. In *Murfreesboro Medical Clinic, P.A. v. Udom*, the Tennessee Supreme Court set forth the following standards for evaluating covenants not to compete:

> In general, covenants not to compete are disfavored in Tennessee. These covenants are viewed as a restraint of trade, and as such, are construed strictly in favor of the employee. However, if there is a legitimate business interest to be protected and the time and territorial limitations are reasonable[,] then non-compete agreements are enforceable. Factors relevant to whether a covenant is reasonable include: (1) the consideration supporting the covenant; (2) the threatened danger to the employer in the absence of the covenant; (3) the economic hardship imposed on the employee by the covenant; and (4) whether the covenant is inimical to the public interest. Also, the time and territorial limits must be no greater than necessary to protect the business interest of the employer.

166 S.W.3d 674, 678 (Tenn. 2005) (internal citations omitted).

The Individual Defendants argue first that Great American has not established that its non-compete provisions served a legitimate business interest. Tennessee courts have recognized that "[t]here is no legitimate interest in protection from competition, only from *unfair*

competition." *Hinson v. O'Rourke*, No. M2014-00361-COA-R3-CV, 2015 WL 5033908, at *3 (Tenn. Ct. App. Aug. 25, 2015) (quoting *Girtman & Assoc., Inc. v. St. Amour*, No. M2005–00936–COA–R3–CV, 2007 WL 1241255, at *6 (Tenn. Ct. App. Apr. 27, 2007)). Accordingly, a business cannot defend its non-compete provision merely by arguing that it would rather not compete against a former employee. A former employer must instead show that it seeks to be protected from something "over and above ordinary competition" arising out of the "special facts" of the particular situation. *Id.* (quoting *Hasty*, 671 S.W.2d at 473).

In determining whether such a legitimate interest has been shown, Tennessee applies the following framework:

> Considerations in determining whether an employee would have . . . an unfair advantage [in the absence of a non-compete provision] include (1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with the customers on behalf of the employer. These considerations may operate individually or in tandem to give rise to a properly protectable business interest.

*Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999) (internal citations omitted). When considering an employee's specialized training and skills, a court must take care to distinguish the employer's legitimate interest in protecting "information that is peculiar to the employer's business" from an improper desire to prevent its former employees' using their "general skills and knowledge of the trade." *Hinson*, 2015 WL 5033908, at *3 (quoting *Selox, Inc. v. Ford*, 675 S.W.2d 474, 476 (Tenn. 1984)).

Great American has alleged that it invested substantially in training and developing its sales force, that the Individual Defendants had access to the company's secrets, and that the Individual Defendants had frequent contacts with Great American's customers. (*E.g.*, Docket No. 51 ¶¶ 22, 32, 45–47, 79.) Great American, moreover, has explained the key role that the

information, relationships, and goodwill it has cultivated play in the company's continued success. It links these advantages not merely to general know-how in the field of fundraising, but also Great American's extensive efforts at customization for particular clients. Those allegations are sufficient to establish a legitimate interest in support of reasonable non-compete obligations.

The Individual Defendants argue next that most of their non-compete provisions are unenforceable because the provisions lack the required limits on territory. The thrust of this argument appears to be that the salespeople's non-compete provisions are unenforceable because, rather than expressly identifying the metes and bounds of the restrictions' territorial scope within the four corners of each provision, they instead provide that the salesperson's non-compete obligation will extend to whatever territory that Great American eventually assigns to her. The Individual Defendants, however, have not identified any Tennessee case forbidding such a formulation, as long as the resultant limits themselves are reasonable.[3] The Individual Defendants moreover have failed to show, at this stage, that the agreements' restrictions were insufficiently narrow to be enforceable. The court accordingly will not dismiss Count III on the ground that the contractual provisions that the Individual Defendants have allegedly breached are unenforceable.

## C. Breach of Fiduciary Duty

The Individual Defendants argue that Count V, for common law breach of fiduciary duty, is preempted by Tennessee's adoption of the Uniform Act. Great American does not dispute that

---

[3] Instead, the Individual Defendants devote an inordinate amount of attention to the fact that the salespeople's non-compete provisions include territorial limitations drafted to include, e.g., "the territory assigned by the Company, from time to time, including the territory outlined in Attachment I," when in fact no such Attachment I exists. (Docket No. 114 at 7.) The plain language of such a provision, however, establishes that the referenced attachment is non-exclusive—meaning that territory will be covered if it was assigned to the salesperson, even if that territory was not listed on the attachment. The lack of an Attachment I, therefore, does not preclude the application of the provision to the territory actually assigned.

some hypothetical breach of fiduciary duty claims may be preempted by the Uniform Act in a case such as this but contends that its claims survive, because they are based on wrongdoing other than the Individual Defendants' alleged misappropriation of trade secrets.

The Uniform Act displaces "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(a). The Act does not, however, affect "[c]ontractual remedies" or "civil remedies that are not based upon misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(b). "The precise scope of the [Uniform Act's] preemption clause has not been interpreted uniformly across . . . jurisdictions." *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015) (citations omitted). This court has previously endorsed the "'same proof' test" adopted by the Eastern District of Tennessee in *Hauck Manufacturing Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649 (E.D. Tenn. 2004). *See Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 985 (M.D. Tenn. 2008). Pursuant to that test,

> a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it.

*Hauck*, 375 F. Supp. 2d at 658.

"In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *In re Estate of Potter*, No. W2016-01809-COA-R3-CV, 2017 WL 4546788, at *2 (Tenn. Ct. App. Oct. 11, 2017) (quoting *Ann Taylor Realtors, Inc. v. Sporu*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967 at *3 (Tenn. Ct. App. Dec. 3, 2010)). A breach of fiduciary duty claim may be preempted under the "same proof" test, if that

15

claim "is based on a misappropriation of protected information." *PGT Trucking, Inc. v. Jones*, No. 15-1032, 2015 WL 4094265, at *4 (W.D. Tenn. July 7, 2015). As pleaded, Count V unambiguously does encompass some theories of liability that would be preempted under the Uniform Act. (*See* Docket No. 51 ¶ 223 ("As employees of Great American who were entrusted with trade secrets and other confidential business information, the Individual Defendants owed Great American at all times a fiduciary duty, which included a duty of loyalty, and were to act solely for the benefit of Great American in matters within the scope of their employment.").) Accordingly, Count V must stand or fall based only on those remaining allegations that can be proven without simultaneously establishing misappropriation of a trade secret.

The Individual Defendants argue that any such non-trade-secret-related breach of fiduciary duty claims fail on the merits, because all of the relevant alleged wrongdoing took place after the Individual Defendants' time as Great American employees. Great American does not appear to dispute that an employee's duty of loyalty, under Tennessee law, applies only "[d]uring the employment relationship," *Ram Tool & Supply Co., v. HD Supply Constr. Supply Ltd.*, No. M2013-02264-COA-R3-CV, 2016 WL 4008718, at *5 (Tenn. Ct. App. July 21, 2016) (quoting *Knott's Wholesale Foods, Inc. v. Azbell*, No. 01A-01-9510-CH-00459, 1996 WL 697943, at *3 (Tenn. Ct. App. Dec. 6, 1996)), but argues that its Amended Complaint is nonetheless sufficient.

The Amended Complaint, though not entirely clear in its language, does appear to allege that Ulloa solicited other Individual Defendants to leave for Cherrydale while he was still a Great American employee. (Docket No. 51 ¶ 171.) A similar breach of fiduciary duty allegation was recently held by the Tennessee Court of Appeals not to be preempted by the Uniform Act. *See Ram Tool & Supply*, 2016 WL 4008718, at *5–7, 19. This court agrees that a plaintiff can show

16

that an employee wrongfully recruited other employees for a new venture without relying on proof that would also show the misappropriation of a trade secret. Great American therefore has pleaded an adequate allegation of breach against Ulloa. With regard to the other Individual Defendants, however, Great American can point only to new allegations based on information unearthed during discovery and not included in the Amended Complaint. (Docket No. 123 at 32–33.) The court can only rule on the claims before it. Great American, therefore, has failed to plead viable causes of action for breach of fiduciary duty against the Individual Defendants other than Ulloa.

Great American suggests that it can remedy this deficiency by amendment. The court will accordingly dismiss Count V against all Individual Defendants but Ulloa, but will do so without prejudice.

### **D. Tortious Interference in Business Relationships**

The Individual Defendants argue that Count VIII, for tortious interference in business relationships, is similarly foreclosed by the Uniform Act. Great American responds that it has pleaded actionable claims for tortious interference in business relationships based on Individual Defendants' activities other than their misappropriation of trade secrets, and therefore the count is not preempted.

To establish a claim for tortious interference with business relationships in Tennessee, a plaintiff must show the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Clear Water Partners, LLC v. Benson*, No. E2016-00442-COA-R3-CV, 2017 WL 376391, at *5 (Tenn. Ct. App. Jan. 26, 2017) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002)). Unlike Great American's claims for breach of fiduciary duty, which depend on duties of loyalty that ended with the Individual Defendants' respective employment relationships, none of these elements suggests a temporal limitation that would preclude Great American from relying on the Individual Defendants' behavior after they began work at Cherrydale.

Count VIII is subject to the same "same proof" test as Count V. As drafted, Count VIII encompasses all of the Individual Defendants' allegedly "wrongful[], improper[] and malicious[] interfere[nce] with [Great American's] actual and anticipated contractual relationships and other business expectancies" with regard to its clients and anticipated clients. (Docket No. 51 ¶ 244.) Some of the Individual Defendants' alleged wrongful actions did involve misappropriation of trade secrets, and any tortious interference claims based on that misappropriation are preempted on the ground that it would be impossible to prove those claims without also proving Great American's trade secret claims. As the Individual Defendants themselves have noted, however, some of the advantages that the Individual Defendants allegedly improperly used to disrupt Great American's business were not the type of advantages protected by trade secret law. For example, the court could find that the Individual Defendants improperly circumvented their non-compete provisions to disrupt Great American's client relationships without concluding that they relied on any particular trade secrets in doing so. Portions of Count VIII therefore would survive the same-proof test, and the court, accordingly, will not dismiss that count.

## IV. CONCLUSION

For the foregoing reasons, Clonts, Ulloa, Mills, and Francis's Motion to Dismiss (Docket No. 113) and Parkin's Motion to Dismiss (Docket No. 120) will be granted in part and denied in part. Great American's claims against Clonts, Mills, Francis, and Parkin for breach of fiduciary duty will be dismissed without prejudice.

An appropriate order will enter.

ENTER this 16th day of January 2018.

ALETA A. TRAUGER
United States District Judge